1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11   OMAR ALEX RUVALCABA,                     )   Case No.: 1:11-cv-01142-AWI-JLT
                                              )
12               Petitioner,                  )   FINDINGS AND RECOMMENDATIONS TO
                                              )   DENY PETITION FOR WRIT OF HABEAS
13        v.                                  )   CORPUS (Doc. 1)
                                              )
14   BRENDA M. CASH, Warden,                  )
                                              )   ORDER DIRECTING THAT OBJECTIONS BE
15               Respondent.                  )   FILED WITHIN TWENTY-ONE DAYS
                                              )
16   _____

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                              **PROCEDURAL HISTORY**

20        Petitioner is in custody of the California Department of Corrections and Rehabilitation serving

21   an indeterminate sentence of life with the possibility of parole, pursuant to a judgment of the Superior

22   Court of California, County of Fresno (the "Superior Court").  This sentence is the result of Petitioner's

23   September 28, 2007 conviction for the following charges: (1) attempted murder (Cal. Pen. Code §

24   664/187); (2) shooting at an inhabited dwelling (Cal. Pen. Code § 246); (3) assault with a firearm (Cal.

25   Pen. Code § 245(a)(2)).  (Clerk's Transcript on Appeal ("CT"), p. 327).  The jury also found true a

26   special allegation that Petitioner personally used a firearm causing great bodily injury (counts one and

27   two), and that he personally used a firearm (count three).   (Lodged Document ("LD") 4, p. 2).

28   Petitioner was sentenced to 15 years to life, plus a consecutive 25-year enhancement pursuant to Cal.

                                              1

Pen. Code § 12022.53, subdivision (d), (count 1); the upper term of seven years plus a consecutive 25-years-to-life enhancement pursuant to § 12022.53, subdivision (d) (count 2); and the upper term of four years, plus a consecutive 10-year enhancement pursuant to § 12022.5, subdivision (a) (count 3).  (Id.). The trial court also imposed a three-year enhancement on count 3 pursuant to § 12022.7, subdivision (a). The sentences on counts 2 and 3 were stayed pursuant to Cal. Pen. Code § 654.  (LD 4, p. 2).

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which, on April 23, 2009, affirmed the judgment and sentence, but ordered errors in the abstract of judgment to accurately reflect the sentence imposed.  (LD 4).  On May 20, 2009, the 5th DCA modified its opinion by correcting the sentence as to count one to reflect a sentence of life with the possibility of parole.  (LD 6).   On May 28, 2009, Petitioner filed a petition for review in the California Supreme Court that was denied on July 29, 2009.  (LD 7 & 8).

On June 29, 2009, Petitioner filed a state habeas petition in the Superior Court, commencing a round of habeas proceedings that culminated in the denial of Petitioner's final petition in the California Supreme Court on June 8, 2011.  (LD 9; 10; 11; 12; 13; 14).

On June 30, 2011, Petitioner filed the instant petition.  (Doc. 1).  Respondent's answer was filed on November 18, 2011 and an amended answer was filed on December 7, 2011.  (Docs. 18 & 19). Petitioner's Traverse was filed on January 10, 2012.  (Doc. 25).  Respondent does not appear to contend any of the three claims are unexhausted.  (Doc. 19, p. 3).

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

On April 29, 2007, Roxanne Cervantes and Elizabeth engaged in a heated telephone conversation, which included name-calling and threats. Elizabeth decided she wanted to confront Cervantes personally. At approximately 10:00 p.m. that same evening, Elizabeth and Omar arrived at Cervantes's apartment. Cervantes saw them pull up; she turned out lights and ordered her children to the back room.

Elizabeth and Omar started loudly banging on Cervantes's door. Cervantes went to the window. Elizabeth and Omar told Cervantes to come outside to fight. Cervantes said she would not do that because her children were present. Omar said if Cervantes would come out, he would not hurt her. Cervantes told them to leave or she would call the police.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

Timothy Allen was the manager of the apartment complex. He saw Elizabeth and Omar outside Cervantes's apartment and heard them beating on her door. He approached the couple and told Omar to keep the noise down or the police would be called. Omar approached him, saying, "'Don't be stepping up on me.'" Allen then turned to talk to some kids on skateboards that were in the area. Elizabeth told Omar that they should go. She grabbed his hand and the two walked back to their car, a silver-colored Honda, which was parked in front of the apartment. When they reached the car, Elizabeth got in. Omar stood near the passenger side of the car. Cervantes testified that, as Omar stood there, he turned, looked directly at her, and shot at her while she was standing at the window. Although it was dark, Cervantes saw the muzzle flash immediately before being struck in the abdomen; it came from where Omar was standing.

Allen, who had remained in the vicinity, heard two shots. He looked back and saw Omar with a gun, standing by the passenger side of the Honda. He saw the muzzle flash of a third shot come from Omar's gun. Allen ran back into the complex for cover. Allen testified he heard a total of seven shots. After the shooting stopped, he started back toward Cervantes's apartment and saw the Honda leave at a high rate of speed. Allen returned to the apartment and called 911. Cervantes told Allen it was "Liz and her boyfriend" who shot her.

Investigating officers found three bullet holes in the window and three or four in the wall just right of the window. They also found spent .357-caliber Glock SIG shell casings on the street near where Omar had been standing and determined that the bullet holes were consistent with a trajectory from the Honda's location. Omar admitted owning a .357-caliber semiautomatic Glock SIG handgun, but claims it was stolen a month before the shooting. He did not report it as stolen because he was placed on hold too long when he tried calling to report the theft.

When interviewed by police, Elizabeth initially denied hearing any gunshots. She claimed that Omar had not fired a gun and stated that the two of them had left when Cervantes called the police. Elizabeth said that if Omar had a gun on him, she never saw it.

After a pause in the interview, Elizabeth was led to believe that Omar had admitted shooting at Cervantes. Elizabeth then changed her story. She told police that, when she and Omar went back to the car, she heard gunshots. After she heard the gunshots, Omar got in the car and Elizabeth drove away. At trial, Elizabeth reverted to her previous claim that she had not heard any gunshots, and said that she had lied to police in order to protect herself when she said otherwise. Elizabeth also testified at trial that she saw another car leave the apartment complex at the same time they did. She had not told police about this car earlier. Allen confirmed that another car left the area at about the same time as Omar and Elizabeth, but he said it appeared to be neighbors trying to get out of the area. He said the other car was "across the street down a ways." No witnesses tied the other car to the shootings.

Omar initially denied having his gun and denied hearing gunshots when interviewed by police; however, when Elizabeth's interview was played for him, he admitted firing at the apartment. He said he carried his gun in a holster in front of his stomach and that he was "pissed ... off ... [be]cause [Cervantes] didn't want to come out, stand up to my wife...." He said the shooting was "a spur of the moment kind of thing," and he "wasn't thinking" when he fired the shots. He said he was trying to scare Cervantes.

At trial, Omar also reverted to his previous claim that he had not fired any of the shots and that he had not heard any shots. He claimed he falsely had confessed so that Elizabeth would not go to prison and to prevent his children from being taken away. He said he and his wife left when Cervantes would not come outside, and denied being upset when the pair confronted Cervantes. Omar admitted to being a good shot.

(LD 4, pp. 2-4).

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DISCUSSION**

### I.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II.      Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that "was based on an unreasonable determination of  the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court

4

applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Id.,

quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's

decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams, 529 U.S. at 409).  In Harrington v.

Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable

application" of federal law is an objective test that turns on "whether it is possible that fairminded

jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If

fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.   As the

United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose

of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in

the state criminal justice systems,'" and not as a means of error correction.  Richter, 131 S.Ct. at 786,

quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in

judgment).  The Supreme Court has "said time and again that 'an *unreasonable* application of federal

law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388,

1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must

show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any

possibility of fairminded disagreement."  Richter, 131 S.Ct. at 787-788. Put another way, a state court's

determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could

disagree" on the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1398 ("This backward-looking

language requires an examination of the state-court decision at the time it was made.  It follows that

the record under review is limited to the record in existence at the same time–i.e., the record before the

state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520;  Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of

6

1    the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v.

2    Morgan, 313 F.3d at 1167.

3          The prejudicial impact of any constitutional error is assessed by asking whether the error had "a

4    substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson,

5    507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht

6    standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

7    Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See

8    Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).

9    Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel

10   under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and

11   courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

12   911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

13          **III.  Review of Petitioner's Claims.**

14          The instant petition itself alleges the following as grounds for relief: (1) failure to instruct the

15   jury on the lesser included offense of voluntary manslaughter; (2) insufficient evidence to support a

16   finding that the attempted murder was willful, deliberate, and premeditated; and (3) ineffective

17   assistance of trial and appellate counsel.

18          A.  Failure To Instruct On The Lesser Included Offense of Manslaughter.

19          Petitioner first contends that the trial court erred by failing to instruct the jury on the lesser

20   included offense of attempted voluntary manslaughter.  This contention is without merit.

21                1.  The 5th DCA's Opinion.

22          The 5th DCA rejected Petitioner's argument as follows:

23          Omar contends it was error not to instruct the jury sua sponte on the elements of attempted
             voluntary manslaughter. "[A] trial court errs if it fails to instruct, sua sponte, on all theories of
24           a lesser included offense which find substantial support in the evidence." (People v. Breverman
             (1998) 19 Cal.4th 142, 162, 77 Cal.Rptr.2d 870, 960 P.2d 1094; see also People v. Parson
25           (2008) 44 Cal.4th 332, 348-349, 79 Cal.Rptr.3d 269, 187 P.3d 1.) The duty to give the
             instruction exists even where the defendant's defense is that he committed no offense and
26           objects to the instruction. (People v. Breverman, supra, at pp. 154-155, 77 Cal.Rptr.2d 870,
             960 P.2d 1094; People v. Barton (1995) 12 Cal.4th 186, 190, 47 Cal.Rptr.2d 569, 906 P.2d
27           531.) Attempted voluntary manslaughter is a lesser-included offense of the offense of
             attempted murder, a fact the Attorney General does not dispute. (See People v. Montes (2003)
28           112 Cal.App.4th 1543, 1545, 5 Cal.Rptr.3d 800.)

Instructional error is subject to a harmless-error review. (People v. Whisenhunt (2008) 44 Cal.4th 174, 214, 79 Cal.Rptr.3d 125, 186 P.3d 496; see also People v. Breverman, supra, 19 Cal.4th at p. 162, 77 Cal.Rptr.2d 870, 960 P.2d 1094 [instructions on lesser-included offense required only when evidence that defendant committed lesser-included offense is substantial enough to merit consideration by jury].) Even if we were to agree that there is sufficient evidence to support an attempted voluntary manslaughter verdict, given Omar's admission that he was "pissed" at Cervantes and did not think before shooting her, we would conclude there is no prejudice.

There was ample evidence that Omar did not act in the heat of passion even though he behaved in a forceful manner. Allen testified that Omar responded aggressively when Allen told him to leave, and Elizabeth stated that Omar had a temper. Even so, there is little evidence that he was acting as a result of an intense, volatile emotion that was preventing rational thought as evidenced by the fact that Elizabeth said he was calm. (See People v. Berry (1976) 18 Cal.3d 509, 515, 134 Cal.Rptr. 415, 556 P.2d 777 [voluntary manslaughter requires evidence that killer's reason obscured due to strong passion aroused by sufficient provocation to cause ordinary person to act rashly]; People v. Wickersham (1982) 32 Cal.3d 307, 335, 327, 185 Cal.Rptr. 436, 650 P.2d 311 [passion includes any high-wrought emotion invoked by provocation; however, if sufficient time elapses between provocation and fatal blow for passion to subside, killing not voluntary manslaughter], disapproved on other grounds in People v. Barton, supra, 12 Cal.4th at p. 200, 47 Cal.Rptr.2d 569, 906 P.2d 531.) Omar did not shoot Cervantes while at the door in the midst of the conflict, but only after he and Elizabeth had walked away from the confrontation. It was at the car that Omar turned and looked directly at Cervantes before shooting her. This is strong evidence of a reasoned act. Additionally, Omar's defense at trial was that he was not the shooter-not that the offense was committed in the heat of passion. While this is not determinative of whether the instruction should have been given (People v. Breverman, supra, 19 Cal.4th at pp. 154-155, 77 Cal.Rptr.2d 870, 960 P.2d 1094), it supports a finding of no prejudice.

In light of the entire record, there is no reasonable probability that a failure to instruct on attempted voluntary manslaughter affected the outcome of trial. (People v. Breverman, supra, 19 Cal.4th at p. 162, 77 Cal.Rptr.2d 870, 960 P.2d 1094.)

(LD 4, pp. 6-8).

### 2. The Federal Standard.

In general, the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497

1    U.S. 227, 239 (1990), *quoting*, Dugger v. Adams, 489 U.S. 401, 409 (1989).

2          In determining whether instructional error warrants habeas relief, the court must consider

3    "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates

4    due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally

5    condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (*quoting* Cupp v.

6    Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); California v. Roy, 519 U.S. 2, 5 (1996)

7    (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v.

8    Abrahamson, 507 U.S. at 637—whether the error had a substantial and injurious effect or influence in

9    determining the jury's verdict.).  The burden of demonstrating that an erroneous instruction was so

10   prejudicial that it will support a collateral attack on the constitutional validity of a state court's

11   judgment is even greater than the showing required to establish plain error on direct appeal. Hanna v.

12   Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

13         Regarding a lesser included offense instruction, the United States Supreme Court has held that

14   the failure to instruct on a lesser included offense in a capital case is constitutional error if there was

15   evidence to support the instruction. Beck v. Alabama, 447 U.S. 625, 638 (1980).  In a non-capital case,

16   such as the case at bar, a defendant is "entitled to an instruction on a lesser included offense if the

17   evidence would permit a jury to rationally find him guilty of a lesser offense and acquit him of the

18   greater." Keeble v. United States, 412 U.S. 205, 208 (1973).  However, in a noncapital case, the failure

19   of a trial court to instruct sua sponte on lesser included offenses does not present a federal

20   constitutional question. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998); Turner v. Marshall,

21   63 F.3d 807, 813 (9th Cir.1995), *overruled on other grounds* by Tolbert v Page, 182 F.3d 677 (9th Cir.

22   1999) (*en banc*) (finding the application of Beck to noncapital cases barred by Teague v. Lane, 498

23   U.S. 288, 299-300, 109 S.Ct. 1060, 1069 (1989)); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976).

24   However, a defendant may suffer a due process violation if the court's failure to give a requested

25   instruction prevents a defendant from presenting his theory of the case.  Bashor v. Risley, 730 F.2d

26   1228, 1240 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984); see, also, United States v. Mason, 902

27   F.2d 1434, 438 (9th Cir.1990) ("A defendant is entitled to have the judge instruct the jury on his theory

28   of defense, provided that it is supported by law and has some foundation in the evidence.").

1    In Bashor v. Risley,  730 F.2d 1228, 1240 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984), the

2    Ninth Circuit recognized that a court's failure to give a lesser included instruction did not present a

3    federal constitutional claim.  Bashor, 730 F.2d at 1239.  Nevertheless, the Court found "no fundamental

4    unfairness in the trial court's failure to instruct on a lesser included offense" to a homicide charge as

5    counsel did not request the lesser included offense instruction and the defense strategy was based "on

6    the theory that Bashor was either guilty or not guilty of deliberate homicide." Id.; see Solis v. Garcia,

7    219 F.3d 922, 929 (9th Cir. 2000); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976)("Failure of a state

8    court to instruct on a lesser included offense fails to present a federal constitutional questions and will

9    not be considered in a federal habeas corpus proceeding.").

10            3.  Analysis.

11           First, as discussed above, the failure of a trial court to instruct sua sponte on lesser included

12   offenses in a non-capital case does not present a federal constitutional question.  Windham, 163 F.3d at

13   1106; Turner, 63 F.3d at 813.  Since this is a non-capital case, Petitioner's first claim fails to present a

14   federal constitutional question, which is a prerequisite for stating a federal habeas claim.  28 U.S.C. §

15   2241(c); § 2254(a).

16           Second, since there is no federal constitutional right to a lesser included offense instruction, the

17   issue must turn on state law, which, as mentioned, is not a basis for federal habeas relief.  Estelle, 502

18   U.S. at 67(federal habeas corpus relief does not lie for errors of state law).  In applying state law, the

19   5th DCA concluded that the record did not contain substantial evidence that Petitioner acted in a heat

20   of passion, but, assuming for the sake of argument that a sua sponte instruction was required, the court

21   held that any error was harmless.  In reaching such a conclusion, the state court pointed out the

22   substantial evidence that Petitioner acted in a deliberate and pre-meditated way in shooting the victim:

23   Allen testified that Omar responded aggressively when Allen told him to leave; Elizabeth stated that

24   Omar had a temper but she also testified that Petitioner was calm; Petitioner did not shoot Cervantes

25   while at the door in the midst of the argument, but only after he and Elizabeth had walked away from

26   the confrontation, whereupon, at the car, Petitioner turned and looked directly at Cervantes before

27   shooting her.  Moreover, Petitioner's theory of the case was not a heat of passion defense, but rather

28   that he was not the shooter and that some unknown person or persons shot the victim.

10

1    As the state court concluded, this is strong evidence of a reasoned act and strongly suggests that

2 the failure to give a sua sponte instruction on the lesser included offense did not have a substantial and

3 injurious effect on the outcome.  Brecht v. Abrahamson, 507 U.S. at 623.  For the reasons set forth

4 above, the Court agrees that the state court adjudication on this point was not objectively unreasonable.

5 Accordingly, the claim must be rejected.

6    B.  Insufficient Evidence.

7    Petitioner next contends that there was insufficient evidence to support the jury's finding that

8 the attempted murder was willful, deliberate, and premeditated.  Again, the contention lacks merit.

9       1.  The 5th DCA's Opinion.

10   The 5th DCA rejected Petitioner's claim with the following reasoning:

11
12   Omar contends there is insufficient evidence to support the jury's finding that the attempted murder was willful, deliberate, and premeditated. We disagree.

13
14   In order to succeed on a challenge to the sufficiency of the evidence to support a jury finding, a defendant must establish that no rational jury could have concluded as it did. The rules of appellate review require that we evaluate the evidence in the light most favorable to the prosecution and presume in support of the judgment every fact a jury could reasonably have deduced from the evidence. (See People v. Rayford (1994) 9 Cal.4th 1, 23, 36 Cal.Rptr.2d 317, 884 P.2d 1369; People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103.) If the circumstances reasonably justify the trier of fact's findings, even if they might also reasonably be reconciled with a contrary finding, we must affirm. (People v. Lenix (2008) 44 Cal.4th 602, 627-628, 80 Cal.Rptr.3d 98, 187 P.3d 946 .)

15
16
17

18   "Premeditation means the killing was 'considered beforehand,' and deliberation requires 'careful thought and weighing of considerations for and against the proposed course of action.' They may take place in a brief interval and the test is not time, but reflection." (In re C.R. (2008) 168 Cal.App.4th 1387, 1393, 86 Cal.Rptr.3d 335, quoting People v. Memro (1995) 11 Cal.4th 786, 862-863, 47 Cal.Rptr.2d 219, 905 P.2d 1305.) Three categories of evidence are sufficient to sustain a premeditated and deliberate murder: evidence of planning, motive, and method. (People v. Anderson (1968) 70 Cal.2d 15, 26-27, 73 Cal.Rptr. 550, 447 P.2d 942.) These categories provide an aid for assessing whether the evidence supports an inference that the killing was the result of preexisting reflection and weighing of considerations, rather than a rash impulse. (People v. Elliot (2005) 37 Cal.4th 453, 470, 35 Cal.Rptr.3d 759, 122 P.3d 968.)

19
20
21
22

23   All three categories of evidence are present here. A reasonable jury could infer that Omar planned the attack when he armed himself with his gun prior to driving to confront Cervantes. The fact that he armed himself supports the inference that he planned a violent encounter with Cervantes, even though it might also support Omar's contention that he brought the gun for protection. (People v. Marks (2003) 31 Cal.4th 197, 230, 2 Cal.Rptr.3d 252, 72 P.3d 1222.) There is also a supportable inference of motive. The jury could have found that Omar intended to kill Cervantes because she had disrespected and threatened his wife during the heated telephone conversation and again at the apartment. Omar said that Cervantes had called his wife a whore and said she had been sleeping around, even though his wife had not done any of these things. Omar said he was angry that Cervantes would not come out and fight his wife.

24
25
26
27
28

11

Elizabeth told police she could "feel" that Omar was upset. In addition, there was evidence that Cervantes had threatened Elizabeth, and Omar went along to protect Elizabeth.

Finally, the method used to inflict the injury suggests deliberation and the intent to kill. Omar and Elizabeth had walked away from the apartment, ending the confrontation. Nonetheless, once Omar reached the car and Elizabeth was safely inside, Omar turned, looked directly at Cervantes, and opened fire. Although Omar admitted being angry, Elizabeth said he was calm. He fired approximately seven shots, directly at the window where Cervantes had been standing. This evidence supports an inference of deliberation. A reasonable jury could have construed the delay in firing, the context of the firing, and the number of shots as evidence of a calculated design to kill. (<u>People v. Elliot, supra</u>, 37 Cal.4th at p. 471, 35 Cal.Rptr.3d 759, 122 P.3d 968; <u>People v. Ramos</u> (2004) 121 Cal.App.4th 1194, 1208, 18 Cal.Rptr.3d 167 [firing numerous rounds at occupied vehicle showed shooting was purposeful and sustained attempted murder conviction].)

(LD 4, pp. 5-6).

        2.  <u>The Federal Standard</u>.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Jackson</u>, 443 U.S. at 319; <u>see also Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. <u>Jackson</u>, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. <u>Id</u>. at 324, n. 16. Moreover, circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. <u>Id</u>.; <u>see, e.g.</u>, <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, <u>Jackson</u> does not permit a federal court to revisit credibility determinations. <u>See id</u>. at 957-958.

After the enactment of the AEDPA, a federal habeas court must apply the standards of <u>Jackson</u> with an additional layer of deference.  <u>Juan H.</u>, 408 F.3d at 1274.  Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.  <u>Id</u>. at 1275.[1]  Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v. Borg</u>, 895 F.2d 520, 525 (9th Cir. 1990).  Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455 U.S. 539, 597 (1981).

In <u>Cavazos, v. Smith</u>, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson</u>

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Cavazos</u>, 132 S.Ct. at 3.

> "<u>Jackson</u> says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  443 U.S., at 319, 99 S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781.

---

[1]Prior to <u>Juan H.</u>, the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  <u>See</u> <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004); <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir. 2005).

1   <u>Cavazos</u>, 132 S.Ct. at 6. [2]

2         3. <u>Analysis</u>.

3       Here, the state court applied the correct standard of review; accordingly, the only issue

4 remaining is whether the state court's adjudication was contrary to or an unreasonable application of

5 that standard.  In the Court's view, it was not.

6       As mentioned, the 5th DCA pointed to substantial evidence of planning and deliberation.  First,

7 the fact that Petitioner armed himself with his gun prior to driving to confront the victim supports the

8 inference that he planned a violent encounter with the victim, even though it might also support

9 Petitioner's contention that he brought the gun for protection; that Petitioner had a motive to kill the

10 victim because she had disrespected and threatened his wife during a heated telephone conversation

11 and again at the apartment; that the victim had called Petitioner's wife a whore and falsely accused her

12 of sleeping around; that Petitioner said he was angry that the victim would not come out and fight his

13 wife; that Petitioner's wife told police she could "feel" that Petitioner was upset; that evidence showed

14 that the victim had threatened Elizabeth, and that Petitioner went along to protect Elizabeth; that

15 Petitioner and his wife had walked away from the apartment, thus ending the confrontation, before

16 Petitioner turned, looked directly at the victim, and fired approximately seven shots directly at the

17 window where the victim had been standing.  All of this evidence together supports a strong inference

18 of deliberation and premeditation. A reasonable juror could thus have construed the delay in firing, the

19 context of the firing, and the number of shots as evidence of a calculated design to kill.

20       For those reasons, the state court's conclusion that sufficient evidence was presented at trial of

21 willfulness, deliberation, and premeditation was not objectively unreasonable.  Accordingly, the claim

22 must be rejected.

23 ///

24 ///

25

26 [2] To the extent that the 5th DCA's opinion does not expressly cite the <u>Jackson v. Virginia</u> standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal

27 <u>Jackson</u> standard for sufficiency claims in state criminal proceedings.  <u>People v. Johnson</u>, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state

28 court adjudication was contrary to or an unreasonable application of that standard.

C.  Ineffective Assistance of Counsel.

Next, Petitioner contends that trial counsel's representation was deficient in failing to request that the court, sua sponte, instruct on the lesser included offense of attempted voluntary manslaughter, and that appellate counsel was deficient for failing to raise the ineffective assistance of trial counsel and for erroneously contending that the lesser included instruction was for voluntary manslaughter instead of *attempted* voluntary manslaughter.  The Court disagrees.

1.  The Superior Court's Ruling.

As the last reasoned decision of the state court, the Superior Court ruling is the relevant touchstone for habeas relief.  The Superior Court denied Petitioner's ineffective assistance claim in his first state habeas petition as follows:

> Finally, to the extent that petitioner argues his trial or appellate counsel was ineffective for failing to present the case in an effective manner that would be persuasive to the jury and the Court of Appeal, petitioner has not alleged any facts showing how trial or appellate counsel's presentation of the case was unreasonable or prejudicial to him.  Simply arguing that his attorneys should have presented their argument in a more effective manner is not sufficient to show ineffective assistance of counsel, since petitioner points to no specific mistakes or omissions in his counsels' arguments.

(LD 10).  At the intermediate appellate level, the 5th DCA rejected Petitioner claim, noting "Petitioner's ineffective assistance of counsel claims are denied both on the merits and discretionarily."  (LD 12).  The California Supreme Court summarily denied Petitioner's ineffective assistance claim.  (LD 13).

2.  The Federal Standard.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional

15

1    norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in

2    that there was a reasonable probability that, but for counsel's unprofessional errors, he would have

3    prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine

4    confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done;

5    rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170,

6    1173 (9th Cir.1998).

7         With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

8    unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v.

9    Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a

10   federal court believes the state court's determination under the Strickland standard "was incorrect but

11   whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan,

12   550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the

13   AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state

14   court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v.

15   Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state

16   court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

17   See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was

18   unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway

19   courts have in reaching outcomes in case-by-case determinations").

20        Here, the state court identified the appropriate federal standard by applying Strickland.[3]  Thus,

21   the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was

22   neither deficient nor prejudicial, was not contrary to or an unreasonable application of Strickland.  For

23   the reasons discussed below, the Court concludes that it was not.

24             3.  Analysis.

25        Here, Petitioner has shown neither the requisite deficient performance nor prejudice.  Regarding

26   trial counsel's failure to request an instruction on the lesser included offense of attempted

27   manslaughter, the Court has already addressed the issue from the standpoint of harmless error.  Thus,

28

---

[3]The 5th DCA cited Williams v. Taylor, 529 U.S. at 390-391, which, in turn, refers to Strickland.

even if counsel's representation were arguably deficient in this regard, Petitioner fails to show the necessary prejudice required by the <u>Strickland</u>.  Moreover, the 5th DCA noted that substantial evidence was presented that Petitioner's actions were indeed deliberate and, thus, not in the heat of passion.  Under those circumstances, Petitioner has not shown that counsel's conduct fell below the standard required for a successful <u>Strickland</u> claim.

Also, it is significant that the defense theory of the case was that Petitioner was not the shooter not that he was the shooter but acted in the heat of passion.  Accordingly, trial counsel's failure to request the lesser included offense instruction could have been a strategic choice to ensure that the instructions the jury would receive were consistent with the defense theory of the case.  Tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. <u>Bashor v. Risley</u>, 730 F.2d 1228, 1241 (9th Cir.), cert. denied, 469 U.S. 838 (1984), or because the tactic did not succeed.

Regarding appellate counsel, Petitioner has two complaints.  First, in the appellate brief, counsel referred to an instruction for manslaughter rather than attempted manslaughter.  However, this error is de minimis and could not, as a matter of law, have violated Petitioner's Sixth amendment right to competent representation.  As Respondent notes, the discussion in the body of the brief correctly referred to <u>attempted</u> manslaughter and the 5th DCA's opinion correctly addressed the issue of <u>attempted</u> manslaughter.  Thus, the heading in question amounts, at most, to an inadvertent typographical error.  By definition, such an error cannot be deficient representation and, in any event, there was no prejudice since the state appellate court clearly understood appellate counsel's argument to refer to an instruction for attempted manslaughter.

Finally, Petitioner argues that appellate counsel should have raised the issue on appeal of ineffective assistance of trial counsel for failing to request the attempted manslaughter instruction.  Obviously, however, if trial counsel was not ineffective for failing to have raised the issue at trial, then appellate counsel cannot be ineffective for failing to argue that trial counsel was ineffective.

Thus, the state court adjudication that trial and appellate counsel were not ineffective was not objectively unreasonable and therefore the claim should be rejected.

///

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 24, 2014**                    **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE